In re RICHMOND PARAMEDICAL
SERVICES, INC., Debtor.

RICHMOND PARAMEDICAL
SERVICES, INC., Plaintiff,

v.

UNITED STATES DEPARTMENT OF
HEALTH AND HUMAN SERVICES

and

Commonwealth of Virginia, Department of Medical Assistance Services, Defendants.

Bankruptcy No. 88–01562–RS.
Adv. No. 88–0558–RS.

United States Bankruptcy Court,
E.D. Virginia,
Richmond Division.

Dec. 20, 1988.

Samuel M. Walker, Jr., Richmond, Va., for plaintiff.

Debra J. Prillaman, Asst. U.S. Atty., Richmond, Va., for U.S. Dept. of Health & Human Services.

Roger Chaffe, Sr. Asst. Atty. Gen., Richmond, Va., for Commonwealth of Virginia Dept. of Medical Assistance Services.

## MEMORANDUM OPINION

BLACKWELL N. SHELLEY, Bankruptcy Judge.

This matter came on for a hearing upon the complaint of the Chapter 11 debtor, Richmond Paramedical Services, Inc., ("RPS" or "the Debtor") seeking to enjoin the United States Department of Health and Human Services ("HHS") from excluding RPS from the Medicare/Medicaid programs. Based upon the arguments of counsel and a review of competing bodies of law, the Court concludes that in order to protect the estate of the debtor and the best interests of the creditors of RPS the Court should enjoin HHS for a period of sixty days from acting to exclude RPS from participation in Medicare and Medicaid.[1]

RPS's complaint brings into focus a conflict between two bodies of federal law. On the one hand, the Social Security Act sets out the rules under which health care providers, like RPS, can participate in the Medicare and Medicaid programs. The law requires the exclusion from participation of entities which fail to abide by those rules. On the other hand, the Bankruptcy Code embodies Congress' intent to encourage the reorganization of financially distressed debtors and to protect the interests of creditors. The Code grants broad authority to bankruptcy courts in fashioning remedies which will balance the interests of debtors and creditors in an effort to avoid the economic dislocations and social hardships which historically resulted from the wholesale liquidation of distressed debtors. Those courts which have considered the scope of the bankruptcy courts' power to enjoin federal administrative proceedings pursuant to 11 U.S.C. § 105 have determined that bankruptcy courts have the discretion and authority to enjoin such proceedings when they would threaten the estate of the debtor. *See e.g., N.L.R.B. v. Superior Forwarding, Inc.,* 762 F.2d 695, 698 (8th Cir.1985), and the cases cited therein.

In this case, HHS asserts that the Secretary of HHS is required to exclude RPS under § 1320a–7 of the Social Security Act. 42 U.S.C. § 1320a–7. The threatened exclusion results from RPS's conviction in the Circuit Court of the City of Richmond, Vir-

---

1. The Court notes that its jurisdiction in this matter is founded upon the authority granted by 28 U.S.C. §§ 1334 and 157, and not upon 42 U.S.C. § 405(g). The Court's power to issue the instant injunction stems from 11 U.S.C. § 105, which authorizes bankruptcy courts to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105.

ginia of criminal offenses related to the delivery of services under the Medicaid program.[2] Apparently RPS, which operates an ambulance service in Richmond, Virginia, repeatedly billed Medicaid for driving more miles than were actually traveled, thereby illegally increasing its reimbursement under the program. RPS was convicted in January, 1988, and in July was notified by letter from HHS that RPS's exclusion from Medicare and Medicaid was imminent. This letter informed RPS of its right to administrative review of HHS's decision. As related below, RPS elected to forego administrative review, and by letter dated November 4, 1988, HHS notified RPS that effective November 24, 1988, RPS would be excluded for five years. RPS filed the underlying complaint in this matter on November 16, 1988, seeking to enjoin its exclusion.

RPS does not challenge its criminal conviction, and concedes that, under the Social Security Act, the Secretary of HHS must exclude the company from participation in the programs. RPS argues, however, that the interests of the Debtor and of its creditors will be best served by a brief stay of the Secretary's action.[3] At the hearing in this matter RPS represented that it is presently attempting to formulate a plan of reorganization which will provide for the sale of the assets of RPS to another entity. The entity which will result from this sale would not be affected by RPS's exclusion from Medicare and Medicaid and would be able to provide ambulance services to Richmond. Absent an injunction from this Court, RPS, which receives a large portion of its operating revenues from Medicare and Medicaid reimbursements, may not be able to procure a purchaser of its assets, and will in all likelihood be required to convert its Chapter 11 case to one under Chapter 7 of the Bankruptcy Code. It appears to the Court that upon liquidation the assets of RPS will be sufficient, if at all, to pay only a small percentage of the claims of RPS's creditors. The Court notes that one of RPS's principal creditors is the Internal Revenue Service. RPS also represented to the Court that the proposed plan of reorganization would upon confirmation pay all its unsecured creditors, as well as the IRS, 100% of their allowed claims.[4]

■ HHS argues that under the Social Security Act judicial review of the decision of the Secretary of HHS in excluding entities convicted of program-related crimes is possible only after an aggrieved entity has exhausted administrative remedies. 42 U.S.C. § 1320a–7(f); *Weinberger v. Salfi*, 422 U.S. 749, 763–768, 95 S.Ct. 2457, 2465–2468, 45 L.Ed.2d 522 (1975). Based upon this argument HHS contends that this Court lacks jurisdiction to issue an injunction in this case. The cases cited by HHS in its argument and briefs, holding that the federal courts are without jurisdiction under 42 U.S.C. § 405(g) absent exhaustion of administrative remedies, are simply inapposite. Those cases are all concerned with instances where the courts attempted to permanently enjoin or substantively overturn decisions of administrative officers or to abort the administrative process prior to its conclusion. In *Matter of Clawson Medical Center*, for example, the district court concluded that the bankruptcy court was without authority to issue an injunction setting the Medicare reimbursement rate and prohibiting the Secretary from rejecting more than 42% of the debtor's claims, since the debtor had failed to exhaust administrative remedies. *In the*

2. RPS pled *nolo contendere* to 10 counts of misrepresentation in commercial dealings with the government. Pursuant to 42 U.S.C. § 1320a–7(i) the *nolo* plea, once accepted by the circuit court, constituted a conviction of a criminal offense.

3. Although the Social Security Act provides for mandatory exclusion of an entity convicted of program-related crimes, the statute does not dictate the date upon which such exclusion must become effective. Determination of the commencement of the exclusion period is apparently within the discretion of the Secretary of HHS. 42 U.S.C. § 1320a–7.

4. The debtor's plan and disclosure statement were filed December 9, 1988. The plan provides that the general unsecured creditors of RPS will be paid in full upon the "Effective Date" of the plan. The effective date will be the date of the merger between RPS and Atlantic Ambulance Associates, Inc. which should take place within 15 days after confirmation.

*Matter of Clawson Medical, Rehabilitation and Pain Care Center, P.C.*, 12 B.R. 647 (E.D.Mich.1981). Here, RPS seeks neither a permanent prohibition against nor a reversal of the Secretary's exclusion decision, and is not attempting to "shortcut congressionally established procedures." *Clawson, supra* at 653. Rather, RPS asks the Court for a brief delay of the implementation of a decision which the Secretary was not statutorily required to make at any particular moment. Thus, the instant case can be distinguished from *Johnson v. First National Bank of Montevideo* in which the circuit court overturned the bankruptcy court's attempt to stay indefinitely the expiration of a redemption period expressly limited by statute to one year. 719 F.2d 270 (8th Cir.1983).

RPS readily concedes that it chose not to request administrative review, because no substantive or procedural basis for such a request existed. The only questions which could have been addressed upon administrative review were the fact of RPS's conviction and the adequacy of HHS's notice of exclusion. RPS does not contest either of these issues. The Court notes that the *Clawson* case suggests that a bankruptcy court's review of administrative actions prior to exhaustion might be appropriate where the process is shown, as here, to be a "hollow gesture." *Clawson, supra* at 653; *Contra Pacific Coast Medical Enterprises v. Harris*, 633 F.2d 123 (9th Cir. 1980). The Court emphasizes that, even though it might be appropriate upon these facts, RPS has not asked the Court to undertake a review of the Secretary's decision to exclude RPS.

The Court is willing to concede that absent exhaustion of administrative remedies it may be without authority to review the decisions of the Secretary of HHS. As stated above, however, in this case RPS has not requested such review. RPS acknowledges the propriety of the Secretary's decision, but asks this Court to exercise the authority granted to it by the Bankruptcy Code to delay implementation of that decision. Thus, the Court has before it parties which are arguing at cross-purposes. On one side, HHS contends that RPS is precluded from challenging the Secretary's action, either because RPS has not sought administrative review, or, in the alternative, because no cause of action outside administrative channels exists until RPS's exclusion becomes effective. On the other side, the debtor argues that all it seeks is a stay of a penalty which it acknowledges as proper.

■ In addition to asserting that this Court is without jurisdiction, HHS argues that an injunction is inappropriate in this case based upon the decision in the *Blackwelder* case. *Blackwelder Furn. Co., etc. v. Seilig Mfg. Co., Inc.*, 550 F.2d 189 (4th Cir.1977). That case sets out a three-prong test which is normally applied in this circuit by courts considering the issuance of injunctions. Courts normally begin by balancing the likelihood of irreparable harm to the plaintiff against the likelihood of such harm to the defendant. Then they address the issue of the likelihood of success on the merits should the injunction be granted. Finally, courts take the public interest into consideration.

HHS contends that, because RPS enjoys no likelihood of success on the merits in a challenge to HHS's exclusion, RPS somehow "fails" the *Blackwelder* test. The Court cannot agree with this contention. First, HHS's focus upon RPS's chances of successfully contesting the Secretary's decision is misdirected. The proper emphasis in this bankruptcy case is upon the potential for reorganization of the debtor. Although at this juncture it is premature to determine the likelihood of a successful reorganization, because the disclosure statement has not been approved and the plan of reorganization has not been submitted to the equity holders and creditors of RPS for approval, it appears clear that absent the entry of a stay order the possibility of a reorganization on any terms beneficial to the creditors of the debtor is remote. Second, the Court notes that while *Blackwelder* is instructive, the Court is not completely hamstrung by the case in the exercise of its equitable authority. As stated above, RPS concedes that it cannot successfully challenge HHS's decision.

Thus, consideration of "likelihood of success on the merits" of a challenge to RPS's exclusion is fruitless. In determining whether issuance of an injunction is proper in this case, the Court must focus on other factors, including the likelihood of irreparable harm to either HHS or the debtor, as well as consideration of the public interest.

In balancing the likelihood of harm to RPS against the likelihood of harm to HHS from the issuance of an injunction in this case, the Court notes a number of considerations. First, any potential harm to HHS will be short-lived. RPS seeks an injunction of only sixty days. Second, the injunction sought is prohibitory in nature, no onerous affirmative obligations are placed upon HHS. Third, the effect of the injunction will be to allow RPS time to make permanent what under HHS's exclusion would only be temporary. For, if the injunction is granted and RPS is successful in reorganizing, RPS will no longer exist and will likely be removed from participation forever. HHS, however, would exclude RPS from participation in Medicare and Medicaid for only five years. Fourth, in the event the injunction is denied, RPS will probably be forced to convert to Chapter 7 and liquidate. This will likely result in greater harm to RPS's creditors including the federal and state taxing authorities, and to the Richmond community which will have one less ambulance service to fill its health care needs. On balance, this Court concludes that the likelihood of harm to HHS is slight, while the probability of harm to RPS and its creditors is great. The record also reflects that harm to the public may occur upon RPS's exclusion through lack of adequate ambulance service until the void is filled by existing or other entities.

HHS asserts that issuance of the requested injunction will injure public interests. HHS characterizes these interests as the public's desire to see the Social Security laws followed, to punish wrongdoers, and to discourage others from defrauding the public. HHS is correct in raising these important public interests, even though the Court notes that in this case the Social Security laws are being followed, RPS is being punished for its wrongdoing, and the deterrent effect of the law's sanctions is being maintained. HHS also contends that the public interest is endangered by allowing RPS an extension of time during which there may be a recurrence of RPS's criminal activities. Any such danger, however, is counterbalanced by the potential harm to the public which may occur through lack of adequate ambulance service in the Richmond community. In addition, the Court notes that HHS does not allege the existence of any continued wrongdoing by RPS since its conviction in January, 1988.

It should be reemphasized that should RPS merge, either inside or outside the bankruptcy context, with another entity, the resulting entity would not be precluded from immediately qualifying under HHS requirements as a health care provider under Medicare and Medicaid. This would be so even if the owners of RPS were to own 99% of the resulting entity. See 42 U.S.C. §§ 1320a–5; 1320a–7(c)(3)(B). The more severe restrictions which apply to individuals convicted of program-related crimes do not apply to corporate entities such as RPS. If the debtor were an individual, the law would prevent him from having an ownership interest in the new entity exceeding 5%. 42 U.S.C. § 1320a–5. The Court notes these facts to highlight the point that RPS is not using the bankruptcy laws to do something which it could not otherwise do. If RPS had completed a sale of its assets at any time, either pre-petition or post-petition, before HHS chose to effect RPS's exclusion, the parties would not have come before the Court on this matter. RPS requested an injunction to provide a delay during which it could complete an action which is not precluded by any law.

Although HHS identifies important public interests, it errs in focusing upon these particular interests to the exclusion of all other aspects of the public interest. The Court believes that other, more important, public interests are at stake in this case. Foremost among these is the interest of the public, as embodied by Congress in the Bankruptcy Code, in protecting the estate of debtors for the benefit of creditors. The

**886**

Court concludes that it is empowered under 11 U.S.C. § 105 to issue an injunction in this case, and further concludes that the issuance of an injunction restraining the Secretary of HHS from acting to exclude RPS from the Medicare and Medicaid programs for a period of sixty days is in the best interests of RPS and its creditors.

Based upon the facts related and the conclusions reached above, the Court further finds that an injunction should also issue against the Director of the Virginia Department of Medical Assistance Services which, as a result of HHS's notification of RPS's exclusion, would be able to exclude RPS under its own authority.

An appropriate Order will issue.