**In re TIDEWATER MEMORIAL HOSPITAL, INC., Debtor.**

**TIDEWATER MEMORIAL HOSPITAL, INC., Plaintiff,**

v.

**Otis R. BOWEN, M.D., Secretary, U.S. Department of Health & Human Services, Defendant.**

**Bankruptcy No. 88–1656–RT.
Adv. No. 89–0114–RT.**

United States Bankruptcy Court, E.D. Virginia, Richmond Division.

Sept. 5, 1989.

Augustus C. Epps, Jr. and Eric E. Ballou, Christian, Barton, Epps, Brent & Chappell, Richmond, Va., for plaintiff.

S. David Schiller and Robert Jaspen, Asst. U.S. Attys., U.S. Attorney's Office, Richmond, Va., for defendant.

## SUPPLEMENTAL MEMORANDUM OPINION

DOUGLAS O. TICE, Jr., Bankruptcy Judge.

### Introduction

This matter came before the Court upon (1) the debtor-in-possession's (the "Hospital") complaint seeking a temporary and permanent injunction against the Department of Health and Human Services (the "Department") prohibiting the withholding of Medicare Program payments from the Hospital and from terminating the Hospital's provider status under the Medicare Program and (2) the Hospital's motion to issue a show cause order and determine that the Department is in violation of the automatic stay imposed by 11 U.S.C. § 362(a) for its withholding of Medicare Program payments from the Hospital. The United States on behalf of its agency, the Department, has filed a motion to dismiss the complaint and an opposition to the motion to issue a show cause order.

The Court convened a preliminary hearing on these matters on February 17, 1989, at which the Court issued a temporary restraining order designed to maintain the status quo between the parties until a full hearing on the merits could be held. A full hearing was held on February 27, 1989, at the conclusion of which, the Court denied the Hospital's request for injunctive relief and denied the Hospital's motion to issue a show cause order. Additionally, the Court directed the Department to remit to the Hospital the Medicare Program payments earned by it for the two biweekly periods of January 27, 1989, to February 10, 1989, and February 10, 1989, to February 24, 1989.

Prior to explaining this ruling, the Court should comment on the impact of these proceedings upon the ability of the Hospital to reorganize. The debtor is not an average chapter 11 debtor. It is the sole hospital serving a rural Virginia community. The only other hospitals available to the citizens of the community around Tappahannock, Virginia, are located approximately fifty miles away. Accordingly, the Court believes there is a public interest involved in the ability of the Hospital to successfully reorganize. It seems that the somewhat inflexible position taken by the United States in these proceedings has failed to account for this public interest.

The following memorandum opinion is issued to supplement the order entered by this Court on March 3, 1989, in Adversary Proceeding No. 89–0114–RT and the order entered by this Court on March 6, 1989, in Case No. 88–1656–RT. The findings of fact and conclusions of law are made in accordance with Bankruptcy Rule 7052 and Federal Rule of Civil Procedure 52.

### Findings of Fact

At the conclusion of the hearing on March 27, 1989, the Court stated orally its findings of fact. Those findings were incorporated in this Court's previous order and are summarized as follows:

1. The debtor Hospital, which operates a health care facility in Tappahannock, Virginia, filed a voluntary chapter 11 bankruptcy petition on July 29, 1988, and since that date has operated as debtor-in-possession as provided by 11 U.S.C. §§ 1101(1), 1107, and 1108.

2. Prior to the filing of the chapter 11 petition the Hospital and the Department entered into three Medicare Provider Agreements whereby the Hospital rendered services to Medicare covered patients and received payments through the Medicare Program in accordance with the Medicare statute, regulations and other Medicare authorities. These agreements, which remain in effect, were signed by the Hospital on June 13, 1966, (hospital services) on May 16, 1985, (home health services) and on October 23, 1985, (skilled nursing facilities).[1]

---

1. For a discussion of the Medicare Payment System, see Bankruptcy Judge Howard Schwartzberg's opinion in *In re Yonkers Hamilton Sanitarium Inc.*, 22 B.R. 427, 429 (Bankr. S.D.N.Y.1982) *aff'd Sapir v. Blue Cross/Blue Shield of Greater New York (In re Yonkers Hamilton Sanitarium Inc.)*, 34 B.R. 385 (S.D.N.Y. 1983).

3. Prior to the filing of the bankruptcy petition, the Hospital had been overpaid for Medicare services rendered in fiscal years 1985 and 1986 and as a result was indebted to the Medicare Trust Fund, from which Medicare Program payments are made. The present amount of the indebtedness arising from the overpayments is in dispute, but it could be as high as $700,000.00. The record does not reveal any allocation of the overpayments as among the three provider agreements.

4. Pre-petition, the United States had begun recovering the Medicare Program overpayment out of subsequent payments coming due to the Hospital from its participation in the Medicare Program under the provider agreements.

5. By letter dated August 11, 1988, the Hospital was advised by the Medicare Program, intermediary Blue Cross–Blue Shield of Virginia, as follows:

The attached letter was prepared prior to our notification of the hospital's bankruptcy status. Therefore, please consider the attached letter not as a demand letter, but rather a letter of notification to the hospital of its indebtedness to the Medicare Program.

Plaintiff's Exhibit # 1 (Hearing held February 17, 1989).

6. After the Blue Cross letter of August 11, 1988, current Medicare Program payments were no longer withheld from the Hospital for application to the pre-petition overpayment debt. Rather, after August 11 current payments were commenced by the intermediary and regularly made to the Hospital on a biweekly billing basis until February 1989.

7. On February 14, 1989, the Hospital received notice from the intermediary that all current Medicare Program payments would be withheld to be applied to the pre-petition overpayment debt. In this notice, the Hospital was advised that the United States was withholding approximately $111,000 which was the estimated Medicare Program payment due to the Hospital for the period January 27, 1989, to February 10, 1989.

8. According to the testimony of Louise H. Osborne, President of Tidewater Memorial Hospital, Inc., 60 percent of the Hospital's revenue comes from the Medicare Program payments, and a loss of these funds could possibly cause the Hospital to cease operation.

9. On February 15, 1989, the Hospital filed its complaint for injunctive relief and motion for a show cause why the Department should not be held in contempt for violation of the automatic stay.

10. At a hearing on February 17, 1989, the Court treated the matter as a request by the Hospital for a temporary restraining order.

11. Following presentation of evidence and argument by the parties on February 17, 1989, the Court directed the United States to process payment requests received from the Hospital, calculate the estimated payment which would have otherwise been made for the period February 10, 1989, to February 24, 1989, and bring a check for that amount to a subsequent hearing scheduled for February 27, 1989.

12. The United States, through its counsel, complied with the February 17 directions and had in Court on February 27 a check payable to the Hospital in the amount of $117,951.15.

13. Also at the February 17 hearing, the Court granted the Hospital leave to amend its complaint for the purpose of correcting the designation of the party defendant.[2]

---

2. The United States contends that the Secretary of the Department of Health and Human Services is the proper party defendant to these proceedings. To support this position the United States refers the Court to 42 C.F.R. § 421.5(b) (1987). The Hospital contends that the Department of Health and Human Services is a proper defendant; however, the Hospital voluntarily amended its complaint to comply with the United States' position. The Court observes that 42 C.F.R. § 421.5(b) states:

Intermediaries and carriers act on behalf of the Administrator in carrying out certain administrative responsibilities that the law imposes. Accordingly, their agreements and contracts contain clauses providing for indemnification with respect to actions taken on behalf of HCFA [the Health Care Financ-

14. The Hospital subsequently filed an amended complaint changing the United States defendant to the Secretary, continuing to name Blue Cross–Blue Shield of Virginia as a defendant, and making new substantive allegations within the complaint.

15. The Hospital has not sought to accept or reject the three Medicare provider agreements, which constitute executory contracts, nor has the United States filed a motion to compel the Hospital to assume or reject these agreements.

16. On December 23, 1988, the United States was sent notice of the Hospital's filing of its disclosure statement and plan of reorganization. The reorganization plan provided for the rejection of the Medicare provider agreements; however, this provision would not be effective until confirmation of the plan.

### Conclusions of Law
#### A. The Department's Jurisdictional Attack

■ As a preliminary matter the Secretary attacks the ability of this Court to hear and determine the Hospital's complaint for injunctive relief and the Hospital's motion for an order to show cause because the doctrines of sovereign immunity and failure to exhaust administrative remedies bar these actions. Although the Secretary cites numerous cases to support these jurisdictional defenses, the Secretary's arguments fail to recognize the procedural form that the Hospital's complaint and motion take. The Hospital has asked for injunctive relief regarding an executory contract and for recognition of a violation of the automatic stay of 11 U.S.C. § 362.

The Secretary cites U.S. District Judge Robert R. Merhige, Jr.'s, opinion in *Russi v. Weinberger*, 373 F.Supp. 1349 (E.D. Va. 1974), for the proposition that the bankruptcy court cannot hear these proceedings until the Hospital has exhausted its Medicare administrative remedies. In *Russi*, licensed medical practitioners and their professional corporation sought declaratory

and injunctive relief against the administrators of the Medicare Program for alleged refusals to disburse funds to the plaintiffs. Judge Merhige, observing that the plaintiffs had administrative remedies available to them, ruled that the plaintiffs had to exhaust their administrative remedies prior to seeking redress in the district court. In supporting his ruling Judge Merhige discussed the purpose for the exhaustion requirement:

> A primary purpose [of the exhaustion of administrative remedies] is, of course, the avoidance of premature interruption of the administrative process. The agency, like a trial court is created for the purpose of applying a statute in the first instance. Accordingly it is normally desirable to let the agency develop the necessary factual background upon which decisions should be based.

*Russi* 373 F.Supp. at 1353–54.

Here, however, the Government's action in apparent violation of the automatic stay provisions of § 362 could well prevent the debtor from having an opportunity for rehabilitation and reorganization. There is an urgency here which goes beyond the domain of Medicare law, and the doctrine of exhaustion of administrative remedies should not be allowed to frustrate the clearly stated goals of the Bankruptcy Code. *See Richmond Paramedical Services Inc. v. U.S. Dept. of Health and Human Services (In re Richmond Paramedical Services, Inc.)*, 94 B.R. 881, 18 B.C.D. 1450 (Bankr.E.D.Va.1988), *aff'd Richmond Paramedical Services, Inc. v. U.S. Dept. of Health and Human Services (In re Richmond Paramedical Services, Inc.)*, Civil No. 89–0081–R, 1989 WL 149144 (E.D.Va.1989); *reh'g granted* Civil No. 88–0558–R, 1989 WL 149150 (E.D.Va.1989).

■ Also, for reasons stated below, the Court rejects the Government's assertion of the defense of sovereign immunity.

This Court finds that the matters raised by the debtor's pleadings are within the

ing Administration] and HCFA is the real party of interest in any litigation involving the administration of the program.

42 C.F.R. § 421.5(b) (1987). Accordingly, it appears that the regulation designates the HCFA as the proper defendant.

jurisdictional mandate of the bankruptcy court, and this Court will immediately exercise its jurisdiction over this proceeding. *See* 28 U.S.C. § 157(a) (1982 and Supp.IV 1988) (Bankruptcy court has jurisdiction to hear cases under title 11.) and 28 U.S.C. § 157(b) (1982 and Supp.IV 1988).

## B. Hospital's Motion for Recognition of the Department's Violation of the Automatic Stay of Section 362

The Hospital filed its motion for the Department to show cause why it should not be held in contempt for its "willful and malicious" violation of the automatic stay on February 15, 1989, which was approximately one day after the debtor received notice of the Secretary's action. The Hospital contends that the Department's withholding of post-petition Medicare payments for pre-petition overpayments is a violation of Code Section 362(a)(3), (a)(4), and (a)(6).

The Secretary denies that the Department is in violation of the automatic stay based upon the argument that withholding of the post-petition Medicare payments was recoupment, as opposed to setoff, and that recoupment is a proper, legal action not prohibited by the automatic stay imposed by Code Section 362(a). The Government relies in part on *In re Yonkers Hamilton Sanitarium Inc.*, 22 B.R. 427, 433 (Bankr. S.D.N.Y.1982) *aff'd*, 34 B.R. 385 (S.D.N.Y. 1983). Other cases support the government's position that recoupment of overpayments under Medicare provider agreements is not prevented by the automatic stay. *See Blue Cross of Western Pennsylvania v. Monsour Medical Center (In re Monsour Medical Center)*, 11 B.R. 1014 (Bankr.W.D.Pa.1981); *In re Berger*, 16 B.R. 236 (Bankr.S.D.Fla.1981).[3]

The evidence here shows that through the Medicare intermediary, Blue Cross/Blue Shield, the Hospital contracted to provide Medicare reimbursable services to its patients under three separate contracts or provider agreements which covered respectively hospital services (June 13, 1966), home health services (May 16, 1985), and skilled nursing facilities (October 23, 1985).

Before the Hospital filed its bankruptcy petition on July 29, 1989, its currently accruing Medicare provider payments under the agreements were being withheld and applied by Blue Cross/Blue Shield to the large overpayments the Hospital had previously received. However, Blue Cross/Blue Shield commenced current payments after acknowledging by letter of August 11, 1988, that it had received notice of the bankruptcy petition. The understanding of the Hospital's management after Blue Cross/Blue Shield's acknowledgement and resumption of payments was that henceforth current payments would be made. And in fact the payments continued until February 14, 1989, when the intermediary gave notice that the bi-weekly payment for the period ending February 10, 1989, and all future payments would be withheld and applied to the overpayments.

According to *Corpus Juris Secundum* recoupment is

> the act of rebating a part of a claim, on which one is sued, by means of a legal or equitable right resulting from a counterclaim arising out of the same transaction.... It is the right of defendant, in the same action, to claim damages from plaintiff, either because he has not complied with some cross obligation of the contract on which he sues or because he has violated some duty which the law imposed on him in the making or performance of that contract. Recoupment rests on the principle that it is just and equitable to settle in one action all claims

---

**3.** It should be noted that decisions on the issue of whether recoupment is subject to the automatic stay are in conflict. For other cases holding that recoupment is not a violation of the automatic stay see *United States v. Midwest Service and Supply Co., Inc. (In re Midwest Service and Supply Co., Inc.)*, 44 B.R. 262 (D. Utah 1983) and *Mohawk Industries, Inc. v. United States (In re Mohawk Industries, Inc.)*, 82 B.R. 174 (Bankr. D.Mass.1987). For cases holding that recoupment is a violation of the automatic stay see *In re Memorial Hospital Iowa County, Inc.*, 82 B.R. 478 (W.D. Wis.1988), *Hiser v. Blue Cross of Greater Philadelphia (In re St. Mary Hospital)*, 89 B.R. 503 (Bankr.E.D.Pa.1988), and *University Medical Center v. Bowen (In re University Medical Center)*, 93 B.R. 412 (Bankr.E.D.Pa.1988).

growing out of the same contract or transaction ...

80 *C.J.S.* Set-off And Counterclaim § 2 (1953); *see also First Nat'l Bank of Louisville v. Master Auto Service Corp.*, 693 F.2d 308 (4th Cir.1982) (Fourth Circuit recognized the doctrine of recoupment in an action to recover accounts receivable.); *Brock v. Career Consultants, Inc. (In re Career Consultants, Inc.)*, 84 B.R. 419 (Bankr.E.D. Va.1988).

■ In essence then, the doctrine of recoupment applies when the competing claims of the debtor and creditor arise from the same contract or transaction. In its simplest form, recoupment allows for the adjustment of the price for a single transaction between two parties.

In oral argument before the Court, the representative of the United States argued that all charges by a provider of Medicare services such as the debtor under a provider agreement constitute a single transaction for recoupment purposes. It was argued in addition that the provider agreements by reference to the Medicare law and regulations incorporate provisions for the recoupment from current provider payments of overpayments previously made to providers. At least in the abstract, the Government's argument appears to be supported by *Yonkers Hamilton Sanitarium*, 22 B.R. at 427.

■ However, the Government has not established which of Tidewater's three provider agreements gave rise either to the current payments withheld by the Medicare intermediary or the overpayment claims recouped against. Apparently there are existing overpayments and current payments under all three agreements, but there is no showing that an attempt was made by the Medicare authorities to withhold current payments from overpayment claims due under particular provider agreements. Accordingly the Court must conclude that the Government has not factually demonstrated its right of recoupment.

Moreover, recoupment is an equitable remedy. 20 *Am.Jur.2d*, Counterclaim, Recoupment and Setoff, § 6. As stated by the district court upon the appeal of *In re Yonkers Hamilton Sanitarium Inc.*, in deciding the question whether recoupment is to be allowed the court is to be "guided by basic principles of equity." *Sapir v. Blue Cross/Blue Shield of Greater New York (In re Yonkers Hamilton Sanitarium Inc.)*, 34 B.R. 385, 388 (S.D.N.Y.1983).

■ The disturbing thing about the action of the Medicare intermediary here was in its discontinuing the current provider payments in February 1989 without prior notice to the Hospital. Since September 1988 these payments had been made, and the hospital was justified in assuming the payments would continue at least until reasonable notice was given to the contrary.

Because the Government has not established its right of recoupment as a matter of evidence, and because under the circumstances the Hospital had the right to expect current payments to be made, the Court concludes the action of the Medicare authorities in withholding payments in February 1989 was a violation of the automatic stay under § 362(a)(3) and (a)(6).[4]

■ Nevertheless, the Court declines to issue an order to show cause to hold the defendant in this adversary proceeding in contempt. It is apparent from this opinion that the attempted recoupment by the Medicare authorities was supported by plausible legal argument. Given this atmosphere, the Court finds no basis for a contempt holding. The remedy for the violation of the automatic stay is better ad-

---

**4.** Although it is unnecessary to decide this issue here, this Court has serious reservations about the holdings in the Medicare recoupment cases cited above, e.g., *Yonkers Hamilton Sanitarium Inc.*, 22 B.R. at 427, *Monsour Medical Center*, 11 B.R. at 1014, and *Berger*, 16 B.R. at 236. In the bankruptcy context where the potential harm to a debtor hospital and other creditors is so great, it would seem appropriate not to allow the un-fettered recoupment of an overpayment to the provider several months or years ago against currently accruing payments. For a recent case restricting the applicability of recoupment to long term contractual arrangements, see *California Canners And Growers v. Military Distributors Of Virginia, Inc. (In re California Canners And Growers)*, 62 B.R. 18 (Bankr.9th Cir.1986).

dressed in the injunctive relief discussion *infra.*

To return to the Government's asserted defense of sovereign immunity, the Court finds that this defense was waived in this case under provisions of Code Section 106(c), which applies to violations of the automatic stay under Section 362. *See In re Lile,* 96 B.R. 81, 86 (Bankr.S.D.Tex. 1989).

### C. Hospital's Complaint for Injunctive Relief

■ The Hospital's complaint seeks temporary and permanent injunctive relief against the Secretary from withholding Medicare payments due to the Hospital and from terminating the Hospital's provider status under the Medicare Program.[5] The Hospital bases its request on Code Section 105.

The Secretary filed a motion to dismiss the complaint, arguing that the Hospital cannot seek to enforce the provider agreements until they are properly assumed as provided by Code Section 365. The Hospital argues that its complaint does not seek to enforce the agreements:

> ... if Tidewater desired to enforce the Provider Agreements, it would have filed the appropriate motion under § 365 to assume them. Here, the [Hospital] has filed an action to require the [Secretary] to cease [payment] withholding. In effect, the [Hospital] only asks the that the [Secretary] follow the specific statutory procedures of §§ 362 and 365.

*Memorandum in Further Support of Motion for Preliminary Injunction and in Opposition to Motion to Dismiss* at 15 (Filed on February 24, 1989).

The representatives of the Hospital have acknowledged their intent to reject the provider agreements. Even so, it is their position that current post-petition services are being provided to Medicare beneficiaries placed at the hospital and that the Medi-care Program must pay the estate for those services notwithstanding the Hospital's overpayment debt to Medicare.

■ The Hospital's position requires the Court to examine the status of the three executory contracts (provider agreements) prior to assumption or rejection. Although much has been written about the relationship of a nondebtor to the unassumed executory contract, few cases have addressed the debtor-in-possession's relationship to an executory contract prior to assumption. *See* Bordewieck, *The Postpetition, Pre–Rejection, Pre–Assumption Status of an Executory Contract,* 59 Am. Bankr. L.J. 197 (1985) (Article reviews the rights and obligations of the nondebtor party to an executory contract.).

In *NLRB v. Bildisco & Bildisco,* the Supreme Court examined the status of an executory contract preassumption. The Court wrote:

> The necessary result of the foregoing discussion is that the Board [the National Labor Relations Board] is precluded from, in effect, enforcing the terms of the collective-bargaining agreement by filing unfair labor practice charges against the debtor-in-possession for violating § 8(d) of the NLRA [National Labor Relations Act].... [T]he filing of the petition in bankruptcy means that the collective-bargaining agreement is no longer immediately enforceable, and may never be enforced again.... We conclude that from the filing of the petition in bankruptcy until formal acceptance, the collective-bargaining agreement is not an enforceable contract within the meaning of the NLRA § 8(d).

*NLRB v. Bildisco & Bildisco,* 465 U.S. 513, 532, 104 S.Ct. 1188, 1199, 79 L.Ed.2d 482 (1984).

In *Bildisco,* the Supreme Court considered and denied the attempted enforcement by a nondebtor against the debtor of

---

5. The Hospital filed an amended complaint on February 28, 1989. In addition to adding Otis R. Bowen, M.D., the Secretary of the U.S. Department of Health and Human Services as a defendant, the amended complaint added substantive allegations that were not in the original complaint. Since the Hospital was granted leave to amend the complaint only as to a defendant, this Court will not consider the other amendments to the complaint. *See* Fed.R.Civ.P. 15 and Bankr.R. 7015.

an unassumed executory contract. Although the Supreme Court's statement quoted above would logically seem to apply equally to a debtor's attempted enforcement against a nondebtor party, it has been held subsequent to *Bildisco* that this holding of the Supreme Court should not be applied to prohibit a debtor from enforcing an executory contract prior to assumption. *See McLean Industries, Inc. v. Medical Laboratory Automation, Inc. (In re McLean Industries, Inc.)*, 96 B.R. 440, 19 B.C.D. 46 (Bankr.S.D.N.Y.1989). *McLean* involved an executory agreement which gave the chapter 11 debtor the right to purchase stock in another corporation and which was an extremely valuable right to the debtor's estate; moreover the debtor's proposed chapter 11 plan provided for assumption of this contract.

Code Section 365 governs the ability of a debtor-in-possession (or a trustee) to assume an executory contract. Under this section, the debtor-in-possession must meet certain conditions before the bankruptcy court will authorize the assumption of an executory contract. If a debtor-in-possession (or trustee) is allowed to enforce an executory contract prior to its assumption, particularly where, as here, the debtor has stated its intent to reject the contract, then the protections given to the nondebtor parties to the contract under Code Section 365 are avoided.

■ Additionally it is hornbook law that a debtor cannot assume the benefits of an executory contract while rejecting the burdens. *See Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1311 (5th Cir.1985) (citing *In re Holland Enterprises, Inc.*, 25 B.R. 301 (Bankr.E.D.N.C.1982) and *In re LHD Realty Corp.*, 20 B.R. 717 (Bankr.S.D.Ind.1982)).

In effect, the Hospital's complaint asks this Court to approve a partial assumption of the provider agreements and force Medicare to perform its obligation to make payments under the agreements until a reorganization plan is confirmed but without requiring the Hospital to pay its own indebtedness for the overpayments. If this Court granted the Hospital's requested relief, the Court would be ignoring the limitations placed on contract assumption by Code Section 365 and would also be allowing the debtor to divorce the benefits from the burdens of the agreements. Such a result is especially untenable given the Hospital's desire to reject the agreements. Accordingly, the Hospital's request for an injunction is denied. *In re McLean*, 96 B.R. at 440, 19 B.C.D. at 46, is distinguishable and will not be followed.

■ However, the Hospital is not without some remedy. Prior to February 1989, the Medicare authorities were content to allow the Hospital to participate in the Medicare program, and the Hospital was content to perform under the provider agreements provided it received current payment. Medicare took no action to force the debtor to assume or reject the agreements though given ample opportunity to do so. Additionally, the Secretary was made aware of the Hospital's intention to reject the agreements sometime between the filing of the Hospital's first plan of reorganization on November 25, 1988, and the hearing on the disclosure statement conducted on January 25, 1989.

Under these circumstances the Court finds that the Hospital should be allowed to recover the value of services rendered to the Medicare Program for the period of time that Medicare had indicated it was willing to allow the agreements to remain in effect. The Court finds this period to be the time until the Secretary gave "recoupment notice" on February 14, 1989, as well as the succeeding biweekly payment period after the notice was given.

Accordingly, under the power granted by Codes Sections 105 and 542, this Court orders the Secretary to turn over the sums above mentioned to the Hospital. This order of turnover is also an appropriate remedy for Medicare's violation of the automatic stay discussed previously.

Appropriate orders have been issued.

The Clerk shall send a copy of this supplemental opinion to counsel for the Department, counsel for the debtor and to the

Office of the United States Trustee–Norfolk Office.