In re Chester VANCE, Debtor.

Lynn L. Tavenner, Chapter 7 Trustee, Plaintiff,

v.

United States of America, Defendant.

Bankruptcy No. 02–60629.
Adversary No. 02–6149.

United States Bankruptcy Court, E.D. Virginia, Richmond Division.

March 28, 2003.

---

Kevin A. Lake, Richmond, VA, for Plaintiff.

Robert P. McIntosh, for Defendant.

## MEMORANDUM OPINION

DOUGLAS O. TICE, JR., Chief Judge.

Hearing was held on January 15, 2003, on motion for summary judgment by the United States of America, the defendant in this adversary proceeding. The court took the matter under advisement and allowed trustee 15 days to file a response to defendant's motion. The court then entered an order continuing the trial pending resolution of the motion for summary judgment. On February 4, 2003, plaintiff filed a response to defendant's motion and filed a cross-motion for summary judgment. Defendant filed a reply in support of its original motion.

For the reasons stated, the court will grant defendant's motion for summary judgment that its efforts to recover the overpayments to debtor constituted a valid equitable recoupment. Plaintiff's cross-motion for summary judgment will be denied.

### Findings of Fact.

Debtor, at all times relevant to this matter, was a member of the United States Marine Corps. He enlisted with the Marines in 1973 by signing an enlistment contract and has since entered into seven enlistment agreements extending his service. Debtor's most recent enlistment history is as follows: on April 28, 1998, debtor signed an Enlistment/Reenlistment Document extending his service to April 27, 2001; on March 7, 2000, he signed an Agreement to Extend Enlistment by eleven months to March 28, 2002, effective April 28, 2001; finally, on January 15, 2002, debtor requested and received a sixteen-month extension of enlistment and is scheduled for retirement on March 31, 2003.

Members of the U.S. Marine Corps are compensated twice per month at a statutory rate fixed by Congress. Debtor's pay was fixed at the rate of E–9 with over 26 years, which is the highest rate of pay for an enlisted member of the Marine Corps. As part of their total compensation, members of the Marine Corps receive a basic allowance for housing (BAH). The allowance is paid to a member directly if he lives in non-military housing. If the member subsequently accepts military housing, the BAH is paid to the housing unit in which he resides.

On March 30, 2000, debtor reported for duty at the Army's Quartermaster School in Fort Lee, Virginia. Debtor initially lived in non-military housing while at Fort Lee. As a result, he was paid a BAH entitlement of $853.00 per month in addition to his military compensation. On May 23, 2000, debtor moved into military housing. Debtor was required to report his change of residence to the Administrative Section at Fort Lee by delivering an Assignment to Family Housing letter. The Administrative Section was never notified and debtor continued to receive monthly payments of $853.00 through October 1, 2001. In September 2001 a routine housing audit of Fort Lee was conducted and it was discovered that BAH payments were being made to debtor during the time he lived in military housing. The audit determined that debtor had received a total overpayment of $14,728.47.

In order to recover the overpayments, a computation of the amount to be withheld

from debtor's pay was made based on the projected end date of debtor's active service at the time (March 28, 2002). Subsequently, the sum of $1,475.00 was withheld from debtor's compensation for the following dates: November 15, 2001; November 30, 2001; December 14, 2001; December 31, 2001; January 15, 2002; February 1, 2002; and February 15, 2002.

Debtor filed a voluntary petition under chapter 7 on January 30, 2002. Once the government became aware of the bankruptcy filing it returned the post-petition payments withheld from debtor on February 1 and 15, 2002.

### Position of the Parties.

#### Trustee

Plaintiff's complaint seeks to recover the BAH cash deductions from debtor's military pay during the 90–day period immediately preceding the filing of debtor's chapter 7 petition. Plaintiff concedes that there was an overpayment to debtor but argues that the defense of recoupment is inapplicable because defendant's claims arise out of two separate transactions. Plaintiff argues that defendant's obligation to make BAH payments to debtor was different from its obligation to pay debtor's basic compensation. As a result, plaintiff contends that the issue must properly be analyzed as a setoff pursuant to 11 U.S.C. § 553.

#### United States

Defendant asserts that debtor was not entitled to the BAH payments sent between May 23, 2000 and October 1, 2001.

Defendant maintains that the BAH overpayments debtor owed to defendant and the military pay that defendant owed to debtor are mutual debts that grew out of the same contract, namely debtor's enlistment agreement. Consequently, application of the doctrine of recoupment is warranted, and the defendant's actions would not violate the Bankruptcy Code.

### Discussion and Conclusions of Law.
### Summary Judgment

Summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56 (as incorporated by Fed. R. Bankr.P. 7056). A party moving for summary judgment bears the initial burden of demonstrating that there is no genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In determining whether this showing has been made, the court must assess the evidence in the light most favorable to the party opposing the motion. *See, e.g., Charbonnages de France v. Smith,* 597 F.2d 406 (4th Cir.1979). Summary judgment is appropriate only where there are no "disputes over facts that might affect the outcome of the suit"; it is not concerned with peripheral or irrelevant facts. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The Fourth Circuit has previously ruled that summary judgment should not be granted "even where there is no dispute as to the evidentiary facts in the case but only as to the conclusions to be drawn therefrom." *Pierce v. Ford Motor Co.,* 190 F.2d 910, 915 (4th Cir.1951).[1]

---

1. The court in *Pierce* set out an elevated standard for summary judgment based on its concern that premature entry of summary judgment may deprive litigants of their right to trial. The court clarified that summary judgment **was** appropriate where it was apparent that no issue of fact was necessary "to clarify the application of the law." *Pierce,* 190 F.2d

If the moving party demonstrates that there is no genuine issue of material fact, the burden shifts to the nonmoving party to demonstrate that there is indeed a genuine issue for trial. *See RGI, Inc. v. Unified Indus., Inc.*, 963 F.2d 658, 661 (4th Cir.1992). Rule 56 states that

> [w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed.R.Civ.P. 56(e). Summary judgment "is favored as a mechanism to secure the 'just, speedy and inexpensive determination' of a case" when the requirements of Rule 56 are met. *Thompson Everett, Inc. v. National Cable Adver., L.P.*, 57 F.3d 1317, 1322–23 (4th Cir.1995) (quoting Fed.R.Civ.P. 1).

The parties agree that summary judgment is appropriate in this case because there is no dispute as to any material fact regarding the subject transactions. The parties dispute whether defendant's actions in this case constituted an impermissible setoff under the Bankruptcy Code or a valid equitable recoupment.[2]

Defendant filed a motion for summary judgment that its recovery of the BAH overpayments was a valid recoupment against its obligation to issue debtor's basic military pay. Plaintiff filed a cross-motion for summary judgment stating that these obligations arose from two separate transactions, making the doctrine of recoupment inapplicable. Plaintiff's motion asserts that the transaction is more appropriately treated as a setoff under 11 U.S.C. § 553.

The court will examine the applicability of setoff versus recoupment under these facts.

### Setoff

The right of setoff is preserved by § 553 of the Bankruptcy Code.[3] Setoff is similar to recoupment in that it "allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding the 'absurdity of making A pay B when B owes A.' " *Citizens Bank*, 516 U.S. at 18, 116 S.Ct. 286 (citations omitted). Setoff may be distinguished from recoupment in that a creditor's right

---

at 915. The facts of this case readily satisfy the heightened standard for summary judgment in *Pierce*. As both parties have filed motions for judgment, neither party will be deprived of a right to trial if judgment is entered against one.

**2.** The court notes that the parties differ on the following points:

1) Plaintiff argues that defendant has the power to increase or decrease debtor's compensation. Defendant responds that, while possible, these actions may be taken only in extraordinary circumstances, such as violations of the Uniform Code of Military Justice, and not in the ordinary course of debtor's employment.

2) Plaintiff claims that, in order to receive BAH payments, debtor was required to affirmatively demonstrate that he lived in non-military housing on a monthly basis. Defendant considers this statement to be erroneous and unsupported.

The dispute over these issues is peripheral to the question of the applicability of the doctrine of recoupment and does not raise an issue of material fact that would defeat a ruling on summary judgment.

**3.** The Bankruptcy Code does not create any rights of setoff. Instead, it preserves any setoff rights that are available under applicable non-bankruptcy law. *Citizens Bank v. Strumpf*, 516 U.S. 16, 18, 116 S.Ct. 286, 133 L.Ed.2d 258 (1995).

of setoff is unaffected by bankruptcy laws only where the mutual obligations arose pre-petition. *See, e.g., Anes v. Dehart (In re Anes),* 195 F.3d 177, 182 (3d Cir.1999). Further, setoff "may be accomplished even if the countervailing claims arise from separate transactions." *Thompson v. Board of Trustees, Fairfax County Police Officers Ret. Sys. (In re Thompson),* 182 B.R. 140, 152 (Bankr.E.D.Va.1995).

█ For a creditor to preserve its setoff rights under 11 U.S.C. § 553, it must meet four conditions: 1) the creditor must hold a pre-petition claim against the debtor; 2) the creditor must owe a debt to the debtor that arose pre-petition; 3) the obligations are mutual; 4) the obligations are valid and enforceable. See 11 U.S.C. § 553(a); 5 Alan N. Resnick & Henry J. Sommer, Collier on Bankruptcy, ¶ 553.01[1], at 553–7 (15th ed. rev.2002). The court is not required to allow obligations to be offset even if these conditions are met. Such a decision "lies within the equitable discretion of the trial court." *DuVoisin v. Foster (In re Southern Indus. Banking Corp.),* 809 F.2d 329, 332 (6th Cir.1987); *Kentucky Cent. Ins. Co. v. Brown (In re Larbar Corp.),* 177 F.3d 439, 447 (6th Cir.1999).

### Recoupment

█ Recoupment is an equitable doctrine that has long been applied in the bankruptcy context. *See, e.g., University Med. Ctr. v. Sullivan (In re University Med. Ctr.),* 973 F.2d 1065, 1079 (3d Cir. 1992). A number of courts have viewed the doctrine of recoupment as a "nonstatutory exception to the automatic stay." *In re Thompson,* 182 B.R. at 147; *see also Tidewater Mem'l Hosp., Inc. v. Bowen (In re Tidewater Mem'l Hosp., Inc.),* 106 B.R. 876, 881 (Bankr.E.D.Va.1989). The Fourth Circuit has defined recoupment as "the right of the defendant to have the plaintiff's monetary claim reduced by reason of some claim the defendant has against the plaintiff arising out of the very contract giving rise to the plaintiff's claim." *First Nat'l Bank of Louisville v. Master Auto Serv. Corp.,* 693 F.2d 308, 310 n. 1 (4th Cir.1982).

█ In order for the doctrine to apply, two threshold issues must be satisfied. First, the source of the defendant's claims must be a contract, as opposed to a government entitlement program. Second, the claims must arise out of the same contract. *See In re Thompson,* 182 B.R. at 147.

As to the first issue, the Third Circuit has ruled that overpayments under government entitlement programs are not subject to the doctrine of recoupment. *See Lee v. Schweiker,* 739 F.2d 870 (3d Cir.1984). In *Lee,* the Third Circuit held that recoupment of social security overpayments was impermissible because the payments were a statutory entitlement and not the result of a contract between the government and the debtor. 739 F.2d 870, 876 (stating that a social welfare statute entitling a party to benefits is not a contract and that the obligation to repay an overpayment is a separate debt that is subject to the Bankruptcy Code); *see also Anes v. Dehart (In re Anes),* 195 F.3d 177, 183 (3d Cir.1999) (holding that a city employee's obligation to repay a loan taken from her retirement fund and the city's obligation to pay debtor's salary do not arise under the same contract).

Second, the claims recovered by defendant must arise from the same contract. There are two prevailing standards for determining whether corresponding liabilities fall under the same transaction. The first is the "logical relationship test" and the second is the more restrictive "integrated transaction test."

The logical relationship test defines transaction broadly. The term "'may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship.'" *Newbery Corp. v. Fireman's Fund Ins. Co.*, 95 F.3d 1392, 1402 (9th Cir.1996) (quoting *Moore v. New York Cotton Exch.*, 270 U.S. 593, 610, 46 S.Ct. 367, 70 L.Ed. 750 (1926)). The Fifth Circuit elaborated on this test by stating that "'a debtor may not assume the favorable aspects of a contract (post-petition payments) and reject the unfavorable aspects of the same contract (the obligation to repay pre-petition overpayments by means of recoupment).'" *Kosadnar v. Metropolitan Life Ins. Co. (In re Kosadnar)*, 157 F.3d 1011, 1016 (5th Cir.1998) (quoting *Aetna Life Ins. Co. v. Bram (In re Bram)*, 179 B.R. 824, 826 (Bankr. E.D.Tex.1995)).

The second test requires that "both debts must arise out of a single integrated transaction so that it would be inequitable for the debtor to enjoy the benefits of that transaction without also meeting its obligations." *University Med. Ctr. v. Sullivan (In re University Med. Ctr.)*, 973 F.2d 1065, 1081 (3d Cir.1992). The court stated that the test for applying a "non-statutory, equitable exception to the automatic stay, should be narrowly construed." *Id.* However, this approach has been criticized as being so restrictive that it "may be used to deny recoupment in virtually every case." 5 Alan N. Resnick & Henry J. Sommer, Collier on Bankruptcy, ¶ 553.10[1], at 553–104 (15th ed. rev.2002).

### The Recovery of BAH Funds was a Valid Equitable Recoupment

█ As discussed below, the facts of this case indicate that the relevant obligations grew out of a single contract between the parties. Consequently, the doctrine of recoupment will be applied. No further discussion of the right of setoff is necessary.

### The Debts Were Based on Contractual Rights

Plaintiff argues that the BAH payments are analogous to a government entitlement and represent a separate transaction. The court finds that the rationale in the *Lee v. Schweiker* line of cases is inapplicable to the present case. In *Lee*, the government sought recovery of overpayments of Social Security benefits to debtor through deductions in debtor's monthly benefits for the eight months following discovery of the overpayments. Debtor challenged the deductions made post-petition and in the 90 days prior to filing her petition. The court found that "[s]ocial welfare payments, such as social security, are statutory 'entitlements' rather than contractual rights." *Lee v. Schweiker*, 739 F.2d 870, 876 (3d Cir.1984). It further stated that the "obligation to repay a previous overpayment is a separate debt subject to the ordinary rules of bankruptcy." *Id.* As the debts did not arise from the same transaction, the court could not apply the doctrine of recoupment and the government's efforts to recoup its debt were found to be in violation of the automatic stay. *Id.*

Here, the BAH payments to debtor are made as a direct result of debtor's enlistment contract with the Marine Corps. Each member of the Marine Corps receives a BAH as part of his total compensation package. The court finds it instructive that the BAH payments are made through the life of debtor's service regardless of any action by the debtor. The only variance is whether these payments will be made to him (if he lives in non-military housing) or to his housing unit (if he lives in military housing). If debtor did not enter into the enlistment contract with the Marine Corps he would not have received

any BAH payments. The BAH is a direct result of debtor's contractual agreement with defendant and is not a government entitlement.

### The Debts Arose From the Same Contract

Under either the logical relationship or the integrated transaction tests, the BAH overpayments to debtor and the subsequent recovery of those overpayments through debtor's military pay occurred under the same transaction. Debtor signed an Enlistment/Reenlistment Document on April 28, 1998, that extended his service to the defendant through April 27, 2001. Prior to the expiration of that agreement, on March 7, 2000, debtor signed an Agreement to Extend Enlistment. The extension took effect on April 28, 2001, allowing debtor's service to continue uninterrupted through March 28, 2002.

The material terms of the agreements between defendant and debtor on April 28, 1998, and March 7, 2000, are the same. Debtor would continue serving as a Master Gunnery Sergeant in the U.S. Marine Corps at the pay rate of E–9 with over 26 years and would receive a basic allowance for housing payment if he resided in non-military housing. The enlistment extensions simply extended the life of the original agreement but introduced no new terms. Debtor may not claim that the defendant's obligation to issue his military pay was separate from its obligation to pay his basic allowance for housing. Neither of these obligations would exist if the debtor did not enter into the enlistment agreement with defendant.

It is apparent the debtor's BAH payments are intertwined with his basic compensation. It would be inequitable to allow him to benefit from an increase in the latter without satisfying the obligations of the former. Defendant's actions would satisfy the integrated transaction test and would, therefore, also meet the logical relationship test.

### Balance of the Equities

When applying the doctrine of recoupment, courts must be "'guided by basic principles of equity.'" *Tidewater Mem'l Hosp., Inc. v. Bowen (In re Tidewater Mem'l Hosp., Inc.)*, 106 B.R. 876, 882 (Bankr.E.D.Va.1989). As part of its equitable foundation, an important function of the doctrine is to prevent unjust enrichment. *See In re Peterson Distrib., Inc.*, 82 F.3d 956, 960 (10th Cir.1996). The court must consider whether any party would receive a windfall. Under these facts, it appears that trustee and the unsecured creditors would unfairly benefit from a return of the recovered funds. Debtor received funds that did not belong to him through either an oversight by defendant or lack of diligence by debtor. It would be inequitable for the court to require defendant to disgorge the overpayments recovered to remedy this oversight. This would be tantamount to forcing defendant to pay back its own money, which it mistakenly paid to debtor, so that unsecured creditors may share in the distribution of an asset that never belonged to debtor. Clearly, the equities in this case weigh heavily in favor of defendant.

For the reasons stated, the court will grant the motion for summary judgment by defendant and will deny plaintiff's cross-motion for summary judgment.

A separate order will be entered.